U.S. COURTS

MAY 16 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
BRITTNEY CAMPBELL, NORTH CAROLINA STATE BAR NO. 31433
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS WORMAN,<br><br>Defendant. | Case No. **CR 23-00136N DCN**<br><br>**INDICTMENT**<br><br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)<br>18 U.S.C. § 1014<br>18 U.S.C. § 1343<br>18 U.S.C. § 1344<br>28 U.S.C. § 2461(c) |

The Grand Jury charges:

### Relevant Terms, Individuals, and Entities

At times relevant to this Indictment:

1. As used in this Indictment, the term "factoring" was a type of accounts receivable financing in which a business entered into an agreement with a private lender to sell, at a discounted price, its accounts receivable in return for immediate cash. Private lenders who provide this type of financing were called factors. Typically, under the factoring arrangement, when an invoice was factored, a percentage of the face value of the invoice was paid immediately by the

**INDICTMENT - 1**

factor to the business. The balance of the face value, less the factoring fees, was paid when the debt was collected.

2.  The term "check kiting," as used in this Indictment, refers to a form of bank fraud consisting of a systematic pattern of depositing nonsufficient funds checks between two or more banks in order to take advantage of the "float"—the time between presentment of a check and the actual receipt of the funds by the bank—to make use of non-existent funds in a checking or other bank account. The purpose of check kiting was to falsely inflate the balance of a checking account in order to allow checks written from the account to clear when, but for the fraud, they would otherwise bounce.

3.  The Defendant, DOUGLAS WORMAN, owned and operated various forest management companies in Idaho and elsewhere since at least 2004.

4.  Worman Forest Management, LLC ("WFM") was a limited liability company registered with the Idaho Secretary of State in or around April 2010 that was owned and operated by WORMAN. WFM, which was based in Coeur d'Alene, Idaho, provided various forestry services to private land owners, timber companies, and public entities such as the U.S. Forest Service.

5.  CRW Resources LLC ("CRW") was a limited liability company registered with the Idaho Secretary of State in or around September 2012 and based in Coeur d'Alene, Idaho. WORMAN's spouse was identified as the owner of CRW and WORMAN was listed as a member. CRW also provided forestry services in various locations, including the Southeastern region of the United States. WORMAN was a signer on several of CRW's bank accounts.

6.  Victim Company 1 ("CV-1") was a limited liability company registered with the Idaho Secretary of State in or around February 2010, with its principal place of business in Hayden,

**INDICTMENT - 2**

Idaho. Victim Company's owner created Victim Company 1 for the purpose of factoring accounts receivables for WFM.

7. Numerica Credit Union was a financial institution based in Spokane Valley, Washington and insured by the National Credit Union Administration ("NCUA").

8. Mountain West Bank ("MWB"), a division of Glacier Bank, was a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC") and headquartered in Kalispell, Montana.

9. Carolina Bank & Trust Company ("Carolina Bank") was a financial institution based in South Carolina and insured by the FDIC.

## COUNTS ONE THROUGH 17
(Wire Fraud)
18 U.S.C. § 1343

### The Scheme to Defraud

10. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs one through nine of this Indictment as if fully set forth herein.

11. Beginning in or around at least 2015 and continuing until at least in or around September 2018, in the District of Idaho and elsewhere, the defendant, DOUGLAS WORMAN, knowingly devised, and intended to devise, a scheme and artifice to defraud Victim Company 1 as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

12. To further the objects and goals of the scheme, the defendant, WORMAN, used the following manner and means, among others:

13. WORMAN submitted, by email and by hand-delivery, invoices for factoring to Victim Company 1 that were false, fraudulent, and inflated in that they did not reflect the actual work performed by WFM for its clients. WORMAN submitted the fraudulent invoices to induce Victim Company 1 to factor the purported accounts receivables.

14. WORMAN prepared, and caused to be prepared, two different versions of the false and fraudulent invoices: one to be sent to WFM clients with amounts listed for the actual work performed, and one to be sent to Victim Company 1 for factoring with amounts listed that were inflated or entirely fictitious.

15. WORMAN used interstate wires to further his scheme, including by submitting false and fraudulent invoices attached to emails sent to Victim Company 1 and by causing interstate wire transfers of funds received into WORMAN's bank account at Numerica from Victim Company 1's account at Washington Trust Bank.

16. WORMAN concealed the fraudulent and fictitious invoices by using funds he received from Victim Company 1 from newly factored invoices to immediately repay the amount due to Victim Company 1 on prior factored invoices.

17. From approximately July 2018 through September 2018, WORMAN further concealed the fraudulent scheme by floating checks between WFM's and CRW's bank accounts at Mountain West Bank and Numerica in order to continue to pay, among other operational expenses, Victim Company 1 for prior factored invoices.

18. In or around September 2018, after Victim Company 1 was alerted to the potential fraud, WORMAN admitted to Victim Company 1 that he had been inflating invoices submitted to Victim Company 1 for approximately four years. WORMAN agreed to execute, and did execute, an Agreement for Repayment and Acknowledgment of Money Owed ("Loan Agreement") on or

about September 20, 2018, on behalf of WFM and CRW in favor of Victim Company 1. According to the terms of the loan, WORMAN agreed to repay $3,175,739.60 in weekly payments of $25,000 per week plus interest. WORMAN and his wife personally guaranteed the loan. Other than a few payments in September 2018, WORMAN did not make timely payments as required by the Loan Agreement.

19.   Due to WORMAN's check kiting scheme described in paragraph 17, Mountain West Bank discovered a $376,130 overdraft in September 2018. In an effort to recover its loss, Mountain West Bank negotiated with WORMAN to convert the stolen funds into a short-term loan. The promissory note, signed by WORMAN and his wife on or about September 28, 2018, was due and payable by December 30, 2018.

20.   Similarly, as a result of the check kiting scheme described in paragraph 17, Numerica suffered an overdraft of $416,429. Numerica recovered the overdraft as funds were deposited into the WFM account.

21.   On or about October 10, 2018, WORMAN sent an email to Victim Company 1 stating that instead of making payments under the Loan Agreement, he intended to pay Numerica and Mountain West Bank first but, that once the payments were completed, WORMAN would "target making our regular payments to you until you are paid off."

22.   In order to repay the loan to Mountain West Bank by the due date, WORMAN and his wife applied for a loan on behalf of CRW from Carolina Bank. In the application process, WORMAN willfully and intentionally omitted any mention of the of the Victim Company 1 Loan Agreement in the amount of $3,175,739.60.

INDICTMENT - 5

23. WORMAN used the proceeds from the Carolina Bank loan to pay Mountain West Bank. WORMAN did not make any additional payments to Victim Company 1 pursuant to the Loan Agreement or otherwise.

24. In total, from at least 2015 through 2018, WORMAN submitted more than $20 million in fraudulent invoices to Victim Company 1 for factoring.

### Executions of the Scheme

25. On or about the dates set forth below, in the District of Idaho and elsewhere, the defendant, DOUGLAS WORMAN, for the purpose of executing, and attempting to execute the scheme described above, did knowingly transmit, and caused to be transmitted, by means of wire communication in interstate commerce the writings, signs, signals and sounds described below for each count, each transmission constituting a separate count of this Indictment:

| Count | Approximate Date | Description of Wire | Fraudulent Invoice Number(s) |
|---|---|---|---|
| 1 | June 18, 2018 | VC-1 check no. 2519 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $168,220.30 deposited into Numerica account no. x6133 on 6/18/2018 | 2664 |
| 2 | July 9, 2018 | VC-1 check no. 2494 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $149,356.47 deposited into Numerica account no. x6133 on 7/9/2018 | 2693 2695 |
| 3 | July 10, 2018 | Cashier's Check no. 2585880 from Washington Trust Bank on behalf of VC-1 issued to Worman Forestry Management in the amount of $145,490.35 deposited into Numerica account no. x6133 on 7/10/2018 | 2700 2702 2703 |

| Count | Approximate Date | Description of Wire | Fraudulent Invoice Number(s) |
|---|---|---|---|
| 4 | July 16, 2018 | VC-1 check no. 2500 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $174,279.87 deposited into Numerica account no. x6133 on 7/16/2018 | 2708  2712<br>2709  2713<br>2710  2714<br>2711 |
| 5 | July 16, 2018 | VC-1 check no. 2501 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $172,807.50 deposited into Numerica account no. x6133 on 7/16/2018 | 2715  2719<br>2716<br>2717<br>2718 |
| 6 | July 23, 2018 | VC-1 check no. 2531 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $207,391.11 deposited into Numerica account no. x6133 on 7/23/2018 | 2722  2728<br>2724  2729<br>2726  2730<br>2727 |
| 7 | July 25, 2018 | VC-1 check no. 2533 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $60,327.00 deposited into Numerica account no. x6133 on 7/25/2018 | 2731<br>2732<br>2733 |
| 8 | July 30, 2018 | Cashier's Check no. 2588205 from Washington Trust Bank on behalf of VC-1 issued to Worman Forestry Management in the amount of $201,824.96 deposited into Numerica account no. x6133 on 7/30/2018 | 2736  2741<br>2737  2742<br>2738  2743<br>2739  2744<br>2740  2745 |
| 9 | July 31, 2018 | Cashier's Check no. 2588408 from Washington Trust Bank on behalf of VC-1 issued to Worman Forestry Management in the amount of $105,014.87 deposited into Numerica account no. x6133 on 7/31/2018 | 2746<br>2748<br>2749<br>2750 |

INDICTMENT - 7

| Count | Approximate Date | Description of Wire | Fraudulent Invoice Number(s) |
|---|---|---|---|
| 10 | August 6, 2018 | VC-1 check no. 2544 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $157,629.18 deposited into Numerica account no. x6133 on 8/6/2018 | 2753<br>2754<br>2755<br>2756<br>2757 |
| 11 | August 13, 2018 | VC-1 check no. 2546 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $349,415.27 deposited into Numerica account no. x6133 on 8/13/2018 | 2760<br>2761<br>2762<br>2763<br>2764<br>2765<br>2766<br>2767 |
| 12 | August 14, 2018 | VC-1 check no. 2550 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $84,270.00 deposited into Numerica account no. x6133 on 8/14/2018 | 2775<br>2776 |
| 13 | August 20, 2018 | VC-1 check no. 2554 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $383,308.33 deposited into Numerica account no. x6133 on 8/20/2018 | 2778  2783<br>2779  2784<br>2780  2785<br>2781  2786<br>2782  2787 |
| 14 | August 21, 2018 | VC-1 check no. 2558 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $25,828.05 deposited into Numerica account no. x6133 on 8/21/2018 | 2788 |
| 15 | August 27, 2018 | VC-1 check no. 2561 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $350,356.28 deposited into Numerica account no. x6133 on 8/27/2018 | 2796  2802<br>2797  2803<br>2798  2804<br>2799  2805<br>2800  2806<br>2801 |

INDICTMENT - 8

| Count | Approximate Date | Description of Wire | Fraudulent Invoice Number(s) |
|---|---|---|---|
| 16 | August 31, 2023 | VC-1 check no. 2567 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $234,685.72 deposited into Numerica account no. x6133 on 8/31/2018 | 2813  2816<br>2814  2818<br>2815  2819 |
| 17 | September 4, 2018 | VC-1 check no. 2572 from Washington Trust Bank account no. x4767 issued to Worman Forestry Management in the amount of $132,910.50 deposited into Numerica account no. x6133 on 9/4/2018 | 2821<br>2822<br>2823<br>2824 |

All in violation of Title 18, United States Code, Sections 1343.

## COUNTS 18 THROUGH 21

### Bank Fraud
### 18 U.S.C. § 1344

26. The allegations set forth in paragraphs one through nine of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27. Beginning in or around July 2018 through in our around September 2018, in the District of Idaho, and elsewhere, the defendant, DOUGLAS WORMAN, knowingly executed and attempted to execute a scheme and artifice to defraud, as to material matters, financial institutions, including Numerica Credit Union and Mountain West Bank, the deposits of which were then respectively insured by the NCUA and FDIC, and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

INDICTMENT - 9

### Manner and Means

28. To further the objects and goals of the scheme, the Defendant, WORMAN, used the following manner and means, among others:

29. WORMAN deposited non-sufficient checks into CRW Resources LLC's bank account at Mountain West Bank and then, after making such deposits, withdrew the funds by transferring checks to Worman Forestry Management LLC's bank account at Numerica and writing checks for payment of business expenses, including paying Victim Company 1 for factored invoices.

30. WORMAN deposited one or more non-sufficient checks into Worman Forestry Management LLC's bank account at Numerica and then, after making such deposits, withdrew the funds by transferring checks to CRW Resources LLC's bank account at Mountain West Bank and writing checks for payment of business expenses.

31. WORMAN wrote checks between his accounts at Numerica and Mountain West Bank, in increasing dollar amounts, engaging in a check kiting scheme, wherein checks were continually being written between the two accounts in such a manner and at such times to artificially and fraudulently inflate the numerical balances in the two accounts. WORMAN did this to manipulate the numerical balance in the accounts and to create the false and fraudulent appearance that he had sufficient legitimate available funds in the accounts, and to trick the banks into honoring the checks drawn against the accounts which, in fact, had insufficient funds to cover the checks.

32. From on or about July 17, 2018 through on or about September 17, 2018, using wire transfers and writing and negotiating checks, WORMAN caused more than $8 million to be sent through interstate facilities of banks for each account listed below, which were unfunded

amounts and were the equivalent of obtaining bank money without obtaining actual, authorized loans. In the course of the scheme, WORMAN caused at least 190 checks to be transferred and 190 wire transfers in the execution of the scheme as follows:

| Approximate Date | Approximate Amount | No. of Checks | Transfer From Financial Institution | Deposit Account Financial Institution |
|---|---|---|---|---|
| 7/17/2018 | 71,000.00 | 2 | Numerica | MWB |
| 7/18/2018 | 113,500.00 | 3 | MWB | Numerica |
| 7/19/2018 | 106,698.00 | 3 | Numerica | MWB |
| 7/24/2018 | 76,170.00 | 2 | Numerica | MWB |
| 7/25/2018 | 50,950.00 | 3 | MWB | Numerica |
| 7/26/2018 | 55,000.00 | 1 | Numerica | MWB |
| 7/31/2018 | 33,950.00 | 2 | MWB | Numerica |
| 8/1/2018 | 38,300.00 | 3 | MWB | Numerica |
| 8/2/2018 | 59,000.00 | 2 | Numerica | MWB |
| 8/6/2018 | 81,858.00 | 2 | MWB | Numerica |
| 8/7/2018 | 148,800.00 | 3 | MWB | Numerica |
| 8/7/2018 | 131,862.00 | 3 | Numerica | MWB |
| 8/8/2018 | 139,810.00 | 3 | MWB | Numerica |
| 8/8/2018 | 209,488.00 | 4 | Numerica | MWB |
| 8/9/2018 | 229,395.00 | 4 | MWB | Numerica |
| 8/9/2018 | 139,810 | 2 | Numerica | MWB |
| 8/10/2018 | 71,800.00 | 1 | MWB | Numerica |
| 8/10/2018 | 175,150.00 | 3 | Numerica | MWB |
| 8/13/2018 | 143,707.87 | 3 | MWB | Numerica |
| 8/13/2018 | 130,000.00 | 2 | Numerica | MWB |
| 8/14/2018 | 317,700.00 | 3 | MWB | Numerica |
| 8/14/2018 | 137,751.00 | 2 | Numerica | MWB |
| 8/15/2018 | 298,323.00 | 4 | MWB | Numerica |
| 8/15/2018 | 408,079.00 | 5 | Numerica | MWB |
| 8/16/2018 | 395,367.00 | 4 | MWB | Numerica |
| 8/16/2018 | 209,800.00 | 2 | Numerica | MWB |
| 8/17/2018 | 242,956.00 | 4 | MWB | Numerica |
| 8/17/2018 | 372,338.00 | 4 | Numerica | MWB |
| 8/20/2018 | 373,691.00 | 4 | MWB | Numerica |
| 8/20/2018 | 70,256.00 | 1 | Numerica | MWB |
| 8/21/2018 | 410,723.00 | 5 | MWB | Numerica |
| 8/21/2018 | 378,700.00 | 5 | Numerica | MWB |
| 8/22/2018 | 340,433.00 | 5 | MWB | Numerica |

INDICTMENT - 11

| Approximate Date | Approximate Amount | No. of Checks | Transfer From Financial Institution | Deposit Account Financial Institution |
|---|---|---|---|---|
| 8/22/2018 | 441,735.00 | 4 | Numerica | MWB |
| 8/23/2018 | 397,028.00 | 3 | MWB | Numerica |
| 8/23/2018 | 356,383.00 | 3 | Numerica | MWB |
| 8/24/2018 | 304,562.00 | 3 | MWB | Numerica |
| 8/24/2018 | 307,200.00 | 3 | Numerica | MWB |
| 8/27/2018 | 307,801.00 | 2 | Numerica | MWB |
| 8/28/2018 | 442,520.00 | 4 | MWB | Numerica |
| 8/28/2018 | 260,961.00 | 2 | Numerica | MWB |
| 8/29/2018 | 418,150.00 | 3 | MWB | Numerica |
| 8/29/2018 | 446,675.00 | 4 | Numerica | MWB |
| 8/30/2018 | 376,124.00 | 3 | MWB | Numerica |
| 8/31/2018 | 180,138.00 | 1 | MWB | Numerica |
| 8/31/2018 | 352,890.00 | 3 | Numerica | MWB |
| 9/4/2018 | 274,104.00 | 3 | MWB | Numerica |
| 9/4/2018 | 299,069.00 | 2 | Numerica | MWB |
| 9/5/2018 | 469,665.00 | 3 | MWB | Numerica |
| 9/5/2018 | 305,860.00 | 4 | Numerica | MWB |
| 9/6/2018 | 317,001.00 | 3 | MWB | Numerica |
| 9/6/2018 | 527,574.00 | 4 | Numerica | MWB |
| 9/7/2018 | 500,915.00 | 3 | MWB | Numerica |
| 9/7/2018 | 258,622.00 | 2 | Numerica | MWB |
| 9/10/2018 | 313,552.00 | 2 | MWB | Numerica |
| 9/10/2018 | 509,917.00 | 3 | Numerica | MWB |
| 9/11/2018 | 460,090.00 | 3 | MWB | Numerica |
| 9/11/2018 | 336,514.00 | 3 | Numerica | MWB |
| 9/12/2018 | 385,045.00 | 3 | MWB | Numerica |
| 9/12/2018 | 466,240.91 | 5 | Numerica | MWB |
| 9/13/2018 | 463,848.00 | 3 | MWB | Numerica |
| 9/13/2018 | 386,098.00 | 3 | Numerica | MWB |
| 9/14/2018 | 416,429.00 | 2 | MWB | Numerica |
| 9/14/2018 | 463,847.00 | 3 | Numerica | MWB |

33. As a result of the scheme, Numerica incurred a loss of approximately $416,429.

34. As a result of the scheme, Mountain West Bank incurred a loss of approximately $376,131.

### Executions of the Scheme

35. On or about the dates specified below, in the District of Idaho and elsewhere, the defendant, DOUGLAS WORMAN, for the purpose of executing the scheme described above, committed the following acts of depositing, attempting to deposit, and causing the deposit of checks as set forth below, each act constituting a separate count of this Indictment:

| Count | Approximate Date | Check No. | Approximate Amount | Financial Institution |
|---|---|---|---|---|
| 18 | 9/14/2018 | 1860 | 210,200.00 | Numerica |
| 19 | 9/14/2018 | 1859 | 206,229.00 | Numerica |
| 20 | 9/14/2018 | 2737 | 187,010.00 | MWB |
| 21 | 9/14/2018 | 2736 | 189,121.00 | MWB |

All in violation of 18 U.S.C. § 1344(1).

### COUNT 22
### False Statements to a Bank or Other Federally Insured Institution
### (Loan and Credit Applications)
### (18 U.S.C. § 1014 and § 2)

36. On or about December 21, 2018, in the District of Idaho and elsewhere, the defendant, DOUGLAS WORMAN, together with others, knowingly made a false statement for the purpose of influencing the action of Carolina Bank, a federally insured financial institution, in an application for a loan in the amount of $180,000, in that he concealed the material fact that he and his wife, on behalf of WFM and CRW, had an outstanding loan balance to Victim Company 1 in the approximate amount of $3,175,739.60 pursuant to the Loan Agreement executed on September 20, 2018 by which they were required to make weekly payments in the amount of $25,000 until the balance was paid in full.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## CRIMINAL FORFEITURE ALLEGATION(S)
### Fraud Forfeiture
### 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a); 28 U.S.C. § 2461(c)

Upon conviction of the offenses alleged in Counts One through 22 of this Indictment, the defendant, DOUGLAS WORMAN, shall forfeit to the United States any and all property, real and personal, tangible and intangible, consisting or derived from any proceeds the said Defendant obtained directly or indirectly as a result of the foregoing offenses. The property to be forfeited includes, but is not limited to, the following:

1. <u>Real Property Subject to Forfeiture.</u> The real property, located as set forth below, including all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, and all equity in the same, as proceeds of the crime of conviction and derived from, and traceable to, proceeds:

   - 2055 East Grandview Drive, Coeur d'Alene 83815
   - 78 Acre Tract, Map No. 180-000-000-008 in Chesterfield County, Patrick, South Carolina 29584, also described as 15200 Hwy 1, Patrick, South Carolina 29584.

2. <u>Unrecovered Cash Proceeds.</u> The Defendant obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, but based upon actions of the Defendant, the property was transferred, diminished, comingled, or is otherwise unavailable. The Defendant obtained and controlled at least $2.5 million in unrecovered forfeitable property.

3. <u>Substitute Assets.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of the Defendant"

up to the value of the Defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty.

Dated this 16 day of May, 2023.

A TRUE BILL

*/s/ [signature on reverse]*

FOREPERSON

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

_____
BRITTNEY CAMPBELL
ASSISTANT UNITED STATES ATTORNEY

INDICTMENT - 15